UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ALISHA DAWN MYERS,

            Petitioner,

    v.

PAULA MYERS, Superintendent,

            Respondent.

Case No. 3:20-cv-01167-MC

**OPINION AND ORDER**

_____

MCSHANE, Chief Judge.

       Petitioner filed this federal habeas action under 28 U.S.C. § 2254 challenging her state

court convictions for Aggravated Murder and related offenses. Petitioner claims that her waiver

of jury trial was involuntary and a product of judicial coercion and that her trial counsel provided

ineffective assistance. Because Petitioner failed to exhaust the majority of her claims in state

**1 - OPINION AND ORDER**

court, and because the denial of her sole remaining claim in state court is entitled to deference, Petitioner's request for relief is DENIED.

## BACKGROUND

On February 24, 2003, Petitioner was indicted in Curry County, Oregon, with four counts of Aggravated Murder, a capital offense "punishable by death," and one count each of Murder, Robbery in the First Degree, Burglary in First Degree, and Unauthorized Use of a Vehicle. Resp't Ex. 102. The charges arose from the beating and stabbing death of Evelyn Tickner, an 87-year old retired teacher, when Petitioner was eighteen years old.

On July 15, 2003, the State extended a plea offer and agreed to the imposition of a life sentence, with the possibility of parole after thirty years, in exchange for Petitioner's guilty plea to one count of Aggravated Murder. Resp't Ex. 112 at 54. The State declared that its offer would expire at the end of the business day on August 29, 2003. *Id.*

Petitioner and her counsel discussed the State's offer with Judge Mickelson, a Curry County judge who was not the presiding judge in Petitioner's case.[1] According to Petitioner, Judge Michelson said that if she did not accept the State's plea offer, "he could almost guarantee that [the outcome of trial] would be bad" and Petitioner "would probably, more than likely get the death penalty." Resp't Ex. 110 at 14. Petitioner's counsel and mother also encouraged her to accept the offer, but Petitioner declined the State's plea offer and the case proceeded to trial. *Id.* at 10-11, 13.

On January 30, 2004, Petitioner executed the following a written jury waiver:

---

[1] The record is not clear whether this discussion took place as part of settlement discussions or as an informal chambers discussion. *See* Resp't Ex. 143 at 9. In any event, Judge Mickelson did not preside over Petitioner's trial and the transcript does not include a record of proceedings before Judge Mickelson.

**2 - OPINION AND ORDER**

> I, the Defendant in the above entitled criminal proceeding, having been heretofore fully informed of all my several constitutional rights, including my right to a Jury Trial, and being well aware of my right thereto, do hereby knowingly waive (give up) my right to a Jury Trial and I do so freely and voluntarily without any threat, promise, or other form of coercion.

Resp't Ex. 112 at 55. Petitioner's waiver was accompanied by letters from counsel and Dr. Larsen, an evaluating psychiatrist, who opined that Petitioner "meets the minimum standard to aid and assist in her own defense and understands the nature of the charges and potentialities levied against her." Resp't Ex. 112 at 58-59.

On February 5, 2004, the prosecutor wrote Petitioner's counsel "to memorialize" their agreement "that the State of Oregon will not seek the death penalty in exchange for Ms. Myers' waiver of a jury in both the guilt and penalty phases of her trial." Resp't Ex. 112 at 57.

On March 22, 2004, trial commenced before Judge Downer, who asked counsel whether Petitioner still wished to proceed with trial before the court. Transcript of Proceedings (Tr.) 98.[2] Counsel confirmed that it was Petitioner's "desire that the entire trial be tried before the Court sitting without a jury" and asked Judge Downer to "make the appropriate inquiries of Ms. Myers." Tr. 98. Counsel explained, "I have explained to Ms. Myers that she's constitutionally and statutorily entitled to a jury. I have advanced the opinion to her as her lawyer that it is in her best interest that we be trying it without a jury and she has agreed but I would appreciate inquiry into both points." Tr. 98. Judge Downer then engaged in the following colloquy with Petitioner:

> THE COURT: Ms. Myers, I know there was—from discussions with the attorneys there was significant opportunity for [defense counsel] to talk to you before you signed this document back in January and I assume—and you've had opportunities since then to talk to [defense counsel] further, is that a fair statement?
>
> THE DEFENDANT: Yes.

---

[2] Citations to the transcript refer to the page number in the bottom right hand corner, e.g., "TRANSCRIPTS, Page 98 of 933."

**3 - OPINION AND ORDER**

THE COURT: Okay. And I'm sure [defense counsel] explained and I would again state, you do have an absolute right to a jury trial if that is your decision and that's on all aspects of this matter. And because of the charges that would be a jury which would first hear evidence and make a determination as to whether you were not guilty or guilty of the Aggravated Murder charges and the other charges and then, if, in fact, they found you guilty on the Aggravated Murder the jury would be making a decision as to what penalty would be imposed.

And in this matter the State… had indicated that they would not be seeking on the Aggravated Murder a death penalty sentence if, in fact, you were waiving a jury. And so that was part of the agreement that the death penalty is not going to be an issue.

So do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: And is it, after consultation with [defense counsel], is it still your decision to proceed on this matter without a jury where I would be making the decisions as to whether or not beyond a reasonable doubt you committed any of these crimes and then if, in fact, you did commit the crimes and one of the decisions was you committed the aggravated murders, then I would be making a decision as to what sentence would be imposed. And the two sentences in that regard would be a life sentence without the possibility of parole or a life sentence with a possibility of parole after you had served thirty years.

And so is that still your decision?

THE DEFENDANT: Yes.

\*\*\*

THE COURT: Then the matter would proceed as a non-jury matter, the written waiver. I would also—I think the record should reflect that there was documentation that a psychologist or psychiatrist who had examined and met with Ms. Myers was of an opinion that Ms. Myers was capable, mentally capable and of—in other words, there weren't any issues as far as signing the waiver of jury trial.

Tr. 98-100.

At the conclusion of trial, Judge Downer found Petitioner guilty on all counts and proceeded to the sentencing phase. Tr. 650, 654-55. Petitioner's counsel provided an additional

**4 - OPINION AND ORDER**

waiver of jury, signed by Petitioner and counsel. Resp't Ex. 112 at 56. Ultimately, Judge Downer imposed a sentence of life without the possibility of parole. Resp't Ex. 101.

Petitioner directly appealed and challenged the imposition of a true life sentence. Resp't Ex. 103. The Oregon Court of Appeals affirmed in a written opinion and the Oregon Supreme Court denied review. *State v. Myers*, 218 Or. App. 635, *rev. denied*, 344 Or. 671 (2008); Resp't Exs. 105, 107.

Petitioner then sought post-conviction relief (PCR), alleging that her jury waiver was a product of judicial coercion by Judge Mickelson and that her trial counsel rendered ineffective assistance in several respects. Resp't Exs. 108-09. The PCR court denied relief and issued a general judgment without addressing Petitioner's claim of judicial coercion. Resp't Ex. 133. Petitioner appealed and the Oregon Court of Appeals reversed on grounds that the PCR court's judgment did "not clearly state the legal bases for the court's denial of each claim for relief." *Myers v. Brockamp*, 271 Or. App. 716, 717 (2015); Resp't Exs. 134, 137. The Court of Appeals did not discuss the substance of Petitioner's claims and remanded the case for further proceedings.

On remand, the PCR court entered an amended judgment addressing all of Petitioner's claims and again denied relief. Resp't Ex. 141. The Oregon Court of Appeals affirmed in a written opinion and the Oregon Supreme Court denied review. *Myers v. Howton*, 296 Or. App. 500, *rev. denied,* 365 Or. 657 (2019); Resp't Exs. at 146-49. Petitioner now seeks federal habeas relief.[3]

---

[3] While this action was pending, Petitioner filed a successive PCR petition alleging that her true life sentence violated the principles in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016). Resp't Ex. 150. The Oregon courts denied relief and Petitioner does not raise a federal habeas claim under *Miller* and *Montgomery* in this action. Resp't Exs. 177-78.

**5 - OPINION AND ORDER**

**DISCUSSION**

Petitioner raises four grounds for relief in her Petition. In Ground One, Petitioner alleges that her trial counsel rendered ineffective assistance by failing to adequately represent her interests and subjecting her to coercion. In Ground Two, Petitioner claims that her wavier of jury trial was coerced by Judge Mickelson's comments threatening "death." In Ground Three, Petitioner alleges that she possessed a reduced mental capacity and should not have been eligible to receive a true life sentence. Finally, in Ground Four, Petitioner alleges that her "confession" was coerced due to her lack of mental capacity. *See generally* Pet. at 5-6 (ECF No. 2).

Respondent argues that Petitioner did not fairly present Grounds One, Three, or Four to the Oregon Supreme Court, and these claims are therefore unexhausted and procedurally barred from federal review. *See* 28 U.S.C. 2254(b)(1)(A) (barring federal habeas review unless the petitioner "has exhausted the remedies available in the courts of the State").

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). In order to exhaust state remedies, a petitioner must present all federal constitutional claims to the State's highest court before seeking federal habeas relief. *Id.*; *Cooper v. Neven*, 641 F.3d 322, 326 (9th Cir. 2011) ("Exhaustion requires the petitioner to 'fairly present' his claims to the highest court of the state."). If a claim was not fairly presented to the state courts and no state remedies remain available for the petitioner to do so, the claim is barred from federal review through procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991); *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002) ("A procedural default may be *caused* by a failure to exhaust federal claims in state

**6 - OPINION AND ORDER**

court."). A federal court may consider unexhausted and procedurally barred claims only if the petitioner demonstrates cause for the default and actual prejudice, or if the lack of federal review would result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 750.

Petitioner does not dispute that Grounds One, Three, and Four are unexhausted and procedurally defaulted, and she presents no argument regarding cause and prejudice to excuse the default. *See* Pet'r Brief at 21 (ECF No. 93). Accordingly, Petitioner fails to show entitlement to habeas relief on Grounds One, Three, and Four. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (stating that a habeas petitioner bears the burden of proving the asserted grounds for relief); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (accord).

In Ground Two, Petitioner claims that the waiver of her right to a jury trial was not a voluntary decision and instead was induced and coerced by Judge Mickelson's comments. Petitioner contends that Judge Mickelson's comments were akin to a "guarantee" of death and scared her into waiving her constitutional right to a jury trial. Pet'r Brief at 24, 27. Respondent argues that the Oregon Court of Appeals rejected Petitioner's claim of judicial coercion in a decision that is reasonable and entitled to deference.[4]

Pursuant to 28 U.S.C. § 2254(d), this Court may not grant a petition for a writ of habeas corpus filed by a state prisoner with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28

---

[4] Respondent initially argued that Ground Two was untimely and subsequently withdrew that argument. (ECF Nos. 10, 71).

**7 - OPINION AND ORDER**

U.S.C. § 2254(d)(1),(2). A state court decision is "contrary to" clearly established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). In either case, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Thus, "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001).

It is well clearly established that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The standard was and remains whether the [waiver] represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Patton v. United States,* 281 U.S. 276, 312-13 (1930) (permitting a jury waiver upon "the consent of government counsel and the sanction of the court," along with "the express and intelligent consent of the defendant"). "A waiver is voluntary if, under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998).

**8 - OPINION AND ORDER**

Petitioner cites no clearly established federal law holding that a non-presiding judge's participation in criminal settlement proceedings is per se coercive and renders a waiver of constitutional rights involuntary. *See, e.g., Bivens v. Poole,* 302 Fed. App'x 598, 598 (9th Cir. 2008) ("[T]there is no clearly established federal law, as determined by the Supreme Court of the United States, prohibiting a state court's participation in plea negotiations."). Thus, the question is whether the Oregon Court of Appeals reasonably found, under "all of the relevant circumstances surrounding it," *Brady*, 397 U.S. at 749, that Petitioner's waiver of a jury trial was a voluntary and deliberate choice and not improperly induced by Judge Mickelson's comments.[5]

Petitioner raised her judicial coercion claim before the PCR court and gave the following deposition testimony:

Q.    In the end you decided to have a judge trial, correct?

A.    Yes.

Q.    And why did you make that decision?

A.    Because after I had went to one of my hearings, I'm not sure what that was about, I was talked to by Judge Mickelson I think his name is and my attorney and was told by the judge that if I did not take a plea bargain that he could almost

---

[5] Petitioner cites several federal cases involving presiding federal judges who promised a lower sentence in exchange for a defendant's waiver of rights or who participated in settlement proceedings in violation of Federal Rule of Criminal Procedure 11. *See* Pet'r Brief at 24-27, 29-32; Fed. R. Crim. P. 11(c)(1) ("An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions."). These cases are inapposite, as Rule 11 does not apply to state court proceedings and Judge Mickelson did not preside over Petitioner's trial or sentencing.

Moreover, "Rule 11(c)(1) was adopted as a prophylactic measure, not one impelled by the Due Process Clause or any other constitutional requirement," and even a violation of Rule 11(c)(1) does not mandate "automatic vacatur of a guilty plea." *United States v. Davila*, 569 U.S. 597, 610, 612 (2013); *see also id.* at 612 ("Rather than automatically vacating Davila's guilty plea because of the Rule 11(c)(1) violation, the Court of Appeals should have considered whether it was reasonably probable that, but for the Magistrate Judge's exhortations, Davila would have exercised his right to go to trial. In answering that question, the Magistrate Judge's comments should be assessed, not in isolation, but in light of the full record.").

9 - OPINION AND ORDER

guarantee that it would be bad and that I would probably, more than likely get the death penalty. And so, you know, being young and not knowing a whole lot about what was going on I was scared and I guess you could say they were really intimidating about it. So, I did what I was told was the right thing to do.

Q.    You understood you had the option to choose between a judge trial and a jury trial, correct?

A.    Hum. Yeah, I guess I did.

Q.    Did you understand that by having a bench trial the state would not be seeking the death penalty if you were convicted?

A:    Yes, that was explained to me, yes.

Q.    Did that have an influence on your decision?

A.    That wasn't necessarily what had helped me make my mind up about it. It was what I was being told about what was going to happen to me if I didn't.

Q.    Did the fact that the prosecuting attorneys represented to you that they would not seek the death penalty if you had a bench trial, did that influence your decision to have a bench trial?

A.    I think so.

                              ***

Q.    How did the judge coerce you?

A.    He told me that, I mean I can't remember specifically what he said, but he told me that he could almost guarantee that I would get the death penalty and asked me if that's what I wanted. Did I want to sit on death row. And him being a judge, you know, it scared me. And so, you know, that's how that happened.

Resp't Ex. 110 at 14-15, 20.

The PCR court denied relief and found that Petitioner presented "[i]nsufficient proof of coercion by Judge Mickelson." Resp't Ex. 141 at 3. The PCR court accepted Petitioner's allegation that Judge Mickelson told her "that in his opinion, a jury would certainly return a death sentence" but found it "appropriate for the court to be sure [Petitioner] understood the reality of her situation." *Id.* The PCR court also found that the State's offer to take "death off the

**10 - OPINION AND ORDER**

table" influenced Petitioner's decision to waive a jury trial, but that Petitioner was not "incapable of making her own decisions since she turned down a plea offer that her [mother] and her attorney urged her to take." *Id.* The PCR concluded that Petitioner's waiver of jury was knowing and voluntary, because "she signed a waiver, her [attorney] discussed that matter with [her] and the court inquired." Resp't Ex. 141 at 4. The PCR court noted that the State's case against Petitioner "was extremely strong" and her conviction was "highly likely." *Id.*

On appeal, the Oregon Court of Appeals affirmed:

Petitioner characterizes the pretrial judge's statement that she would likely face the death penalty if she chose a jury trial as a "threat of death" that overbore her will and coerced her into waiving her right. However, the post-conviction court understood it differently. The court found that the pretrial judge was ensuring that petitioner was aware of the "reality of her situation" and that the statement of that reality did not overwhelm or confuse petitioner. The evidence the court cited in making that finding adequately supports it. At her deposition, petitioner testified that she knew she had the choice of a bench trial or jury trial. She discussed the matter with her attorney, and she signed a written waiver in which she explicitly acknowledged that she was waiving her right "freely and voluntarily." Several months passed between petitioner signing the waiver and the colloquy with the trial judge, during which the judge offered her another chance to change her mind. Furthermore, before the state's offer at issue in this case, petitioner had rejected a previous plea offer by the state, demonstrating her ability to make independent decisions regarding her case.

Petitioner's decision to waive her right to a jury trial may have been affected by the fear of facing the death penalty, but the record, viewed consistently with the post-conviction court's findings, does not indicate that the pretrial judge's statements impaired her capacity for self-determination or overbore her free will. To the contrary, the facts demonstrate that petitioner was able to rationally and independently weigh the decision of whether to accept the state's offer to take the death penalty off the table in exchange for her waiver. The court scrutinized petitioner's circumstances, including her history of mental health and substance abuse issues and her age when she entered her waiver. Petitioner was evaluated by a psychiatrist who opined that she was capable of making the decision on her own, and petitioner has not explained why her age, background, or life experiences rendered her decision an "involuntary" one.

*Myers*, 296 Or. App. at 512-13.

**11 - OPINION AND ORDER**

Petitioner argues that the PCR court made, and the Oregon Court of Appeals accepted, an unreasonable determination of the facts by finding that Judge Mickelson's comments "appropriately" sought to convey the "reality of the situation" to Petitioner. Pet'r Brief at 28. Relatedly, Petitioner argues that the PCR court and the Oregon Court of Appeals unreasonably applied *Brady* by failing to recognize the "inherently coercive" effect of Judge Mickelson's comments. *Id.* at 24.

As cited above, the Oregon Court of Appeals held that the record supported both the PCR court's interpretation of Judge Mickelson's statements as explaining the "reality" of Petitioner's situation and its finding that those statements did not **"**impair" Petitioner's "capacity for self-determination" or overbear "her free will." *Myers*, 296 Or. App. at 512-13. The Oregon Court of Appeals did not make an unreasonable determination of the facts or unreasonably apply *Brady* and its progeny, and its decision is entitled to deference by this Court.

The State's evidence showed that Petitioner lay in wait at the home of Ms. Tickner, a retired schoolteacher, who had extended kindness to Petitioner and given her a gift a few weeks earlier. Tr. 102, 256, 556-57, 610, 631, 691. When Ms. Tickner returned home, Petitioner beat, stomped, and stabbed Ms. Tickner to death and stole Ms. Tickner's jewelry and automobile. Tr. 102, 352-62, 619. Ms. Tickner suffered eleven stab wounds and bruises to her entire body (likely inflicted by lug soled shoes), and she was beaten on the head and face with her own ceramic pitcher. Tr. 83, 102, 351-54, 356-58, 364-68. Ms. Tickner and several rooms in her home were covered in blood, evincing a violent and brutal attack, with Ms. Tickner's hair caught in the hinge of the pocket-knife used to stab her and shards of her ceramic pitcher embedded in a cupboard door. Tr. 118, 197, 203-04, 391, 393-95, 650-51. After the murder, Petitioner picked up a male friend in Ms. Tickner's car and drove to a relative's house in another town, where they

**12 - OPINION AND ORDER**

smoked methamphetamine and had sex. Tr. 456-59. Petitioner was later apprehended while driving Ms. Tickner's vehicle and in possession of Ms. Tickner's belongings. Tr. 28-29, 102. Law enforcement officers found a pair of bloodstained jeans and t-shirt in the trunk of Ms. Tickner's car, and blood was found on the driver's side door mat and on Petitioner's shoe. Tr. at 313, 318, 321, 332, 428. DNA analysis confirmed that the blood was Ms. Tickner's, and latent fingerprints found at the murder scene were identified as Petitioner's. Tr. at 319, 380-81, 473-74.

Given these facts, the Oregon Court of Appeals reasonably accepted the PCR court's finding that Judge Mickelson attempted to convey the gravity, or the "reality," of Petitioner's situation and the choice she faced at the time: accepting a favorable plea offer with a chance of parole, or proceeding to trial by jury and facing a death sentence. Essentially, Judge Mickelson told Petitioner that, in his opinion, proceeding to trial would likely result in the jury finding her guilty and imposing the death penalty. While injecting his personal opinion was not necessarily appropriate, Judge Mickelson's comments did not suggest that he or any other judge would personally ensure that Petitioner received the death penalty if she exercised her right to trial; she would "get" a death sentence from the jury. Because Judge Mickelson was not the presiding trial judge and had no authority over Petitioner's trial or sentencing, the PCR court and the Oregon Court of Appeals reasonably found that Judge Mickelson's candid assessment was not a "threat."

Notably, despite Judge Mickelson's comments and the urging of Petitioner's counsel and mother to accept the State's plea offer, Petitioner declined. If Judge Mickelson's comments had been as coercive as Petitioner asserts, she presumably would have accepted the State's plea offer, particularly when the offer not only withdrew the death penalty but also allowed Petitioner the opportunity for parole. As the Oregon Court of Appeals reasonably found, Petitioner's declination of the plea offer demonstrated "her ability to make independent decisions regarding

**13 - OPINION AND ORDER**

her case" and belied the claim that Judge Mickelson's comments "overbore her will and coerced her into waiving her right." *Myers*, 296 Or. App. at 512.

After declining the State's plea offer, several months elapsed before Petitioner accepted the State's offer to forgo the death penalty in exchange for her waiver of a jury trial. Petitioner's written waiver acknowledged that she did so "freely and voluntarily without any threat, promise or other form of coercion," and Petitioner testified during her PCR deposition that she understood the terms of the State's offer and the consequences of waiving her right to a jury. Resp't Ex. 110 at 14; Resp't Ex. 112 at 55. Petitioner had several weeks to consider her decision before the commencement of trial, and she reaffirmed her waiver in open court before Judge Downer. Tr. 98-99. Petitioner's counsel also averred that Petitioner voluntarily chose to waive her right to a jury and understood the consequences of her decision. These facts, coupled with the length of time between Judge Mickelson's comments and Petitioner's jury waiver, further support the Court of Appeals' decision that Petitioner "was able to rationally and independently weigh the decision of whether to accept the state's offer to take the death penalty off the table in exchange for her waiver." *Myers*, 296 Or. App. at 513.

Granted, Petitioner claims that Judge Mickelson's comments "scared" her. Resp't Ex. 110 at 14, 20. And, as the PCR court recognized, the record reflects that Petitioner's fear of receiving the death penalty and the State's offer to forgo the death penalty influenced her decision to waive a jury trial. However, a waiver of constitutional rights "is not invalid merely because entered to avoid the possibility of a death penalty." *Brady*, 397 U.S. at 755; *Alford*, 400 U.S. at 31 (reiterating that "a plea of guilty which would not have been entered except for the defendant's desire to avoid a possible death penalty…was not for that reason compelled within the meaning of the Fifth Amendment"); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364

14 - **OPINION AND ORDER**

(1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendants assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'") (citation omitted); *Bostick v. Craven*, 429 F.2d 23, 24 (9th Cir. 1970) ("The fact that a plea of guilty is entered to avoid the possibility of a death penalty does not make the plea involuntary."). As explained above, the record of Petitioner's jury waiver gives no indication that she "was so gripped by fear of the death penalty or hope of leniency that [she] did not or could not, with the help of counsel, rationally weigh the advantages of [a jury trial] against the advantages of" a court trial. *Brady*, 397 U.S. at 750.

Considering "all of the relevant circumstances," the Oregon Court of Appeals reasonably found that Judge Mickelson's comments did not constitute "mental coercion overbearing the will of" Petitioner and that her waiver of jury was voluntary. *Brady*, 397 U.S. at 749, 750. Accordingly, Petitioner fails to show that the Oregon Court of Appeals unreasonably applied clearly established federal law or made an unreasonable determination of the facts, and she does not establish entitlement to federal habeas relief.

## CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 2) is DENIED. A Certificate of Appealability is DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 19th day of March, 2026.

s/ Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge

**15 - OPINION AND ORDER**